1  Andrew J. Gramajo (SBN: 338144)
2  **AJG LAW GROUP, PC.**
   25A Crescent Dr. #402
3  Pleasant Hill, CA, 94523
   Telephone: (415) 638-9140
4  Email: andrew@ajglawgroup.us

5  Attorney for Plaintiff,

6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9           **FOR THE COUNTY OF LOS ANGELES-LIMITED JURISDICTION**

10 PORTIA MASON, an individual,              ) Case No.: 25STLC02338
                                             )
11                                           ) **COMPLAINT FOR:**
                                             )
12                        Plaintiff(s),      )     1. **Unruh Civil Rights Act Cal. Civ. Code**
                                             )        **§ 51-53.**
13            vs.                            )     2. **California Disabled Persons Act Cal.**
                                             )        **Civ. Code § 54.1.**
14 WEST MARINE PRODUCTS, INC., a Florida     )     3. **ADA 42 U.S.C. § 12181** *et seq.*
                                             )
15 Corporation; and DOES 1-50, Inclusive,    )
                                             ) **Demand: Exceeds $12,500**
16                        Defendant(s).      )

17

18 _____   **DEMAND FOR A JURY TRIAL**

19 PLAINTIFF PORTIA MASON ("PLAINTIFF"), an individual, on behalf of herself and all other

20 similarly situated current and former customers of WEST MARINE PRODUCTS, INC.

21 ("DEFENDANT"), alleges on information and belief, except for her own acts and knowledge which

22 are based on personal knowledge, the following:

23

24                              **INTRODUCTION**

25     1. Plaintiff PORTIA MASON ("Plaintiff"), on behalf of herself and others similarly situated,

26 asserts the following claims against WEST MARINE PRODUCTS, INC. ("Defendant") as follows.

27     2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading

28 software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-

                                        - 1 -
                                      COMPLAINT

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/24/2025 2:26 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Delgado, Deputy Clerk

impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

4. "Being unable to access website puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013).

5. Plaintiff is a blind, visually impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq.

6. Plaintiff requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

7. Plaintiff, individually brings this complaint to secure redress against Defendant WEST MARINE PRODUCTS, INC. ("Defendant"), for its failure to design, construct, maintain, and operate its website to be fully and equally accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiffs' rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

8. Plaintiff brings this civil rights action against Defendant to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic

1  services for use with a computer screen reading program—where necessary to ensure effective
2  communication with individuals with a visual disability, and to ensure that such persons are not
3  excluded, denied services, segregated or otherwise treated differently than sighted individuals; and
4  (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal
5  access to online content.

6      9. Because Defendant's website, www.westmarine.com, (the "Website" or "Defendant's
7  website"), is not fully or equally accessible to blind and visually impaired consumers in violation of
8  the ADA, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

9          a) that WEST MARINE PRODUCTS, INC. retain a qualified consultant acceptable to
10         Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the
11         accessibility of its Website so the goods and services on them may be equally accessed and
12         enjoyed by individuals with vision related disabilities;

13         b) that WEST MARINE PRODUCTS, INC. work with the Mutually Agreed Upon Consultant
14         to ensure that all employees involved in website development and content development be
15         given web accessibility training on a periodic basis, including onsite training to create
16         accessible content at the design and development stages;

17         c) that WEST MARINE PRODUCTS, INC. work with the Mutually Agreed Upon Consultant
18         to perform an automated accessibility audit on a periodic basis to evaluate whether WEST
19         MARINE PRODUCTS, INC.'s Website may be equally accessed and enjoyed by individuals
20         with vision related disabilities on an ongoing basis;

21         d) that WEST MARINE PRODUCTS, INC. work with the Mutually Agreed Upon Consultant
22         to perform end-user accessibility/usability testing on a periodic basis with said testing to be
23         performed by individuals with various disabilities to evaluate whether WEST MARINE
24         PRODUCTS, INC.'s Website may be equally accessed and enjoyed by individuals with vision
25         related disabilities on an ongoing basis;

26         e) that WEST MARINE PRODUCTS, INC. work with the Mutually Agreed Upon Consultant
27         to create an accessibility policy that will be posted on its Website, along with an e-mail address
28         and tollfree phone number to report accessibility-related problems; and

1    f) that Plaintiff, their counsel and its experts monitor Defendant's Website for up to two years

2    after the Mutually Agreed Upon Consultant validates it is free of accessibility errors/violations

3    to ensure WEST MARINE PRODUCTS, INC. has adopted and implemented adequate

4    accessibility policies.

5    10. Web-based technologies have features and content that are modified on a daily, and in

6    some instances, an hourly, basis, and a one time "fix" to an inaccessible website will not cause the

7    website to remain accessible without a corresponding change in corporate policies related to those

8    web-based technologies. To evaluate whether an inaccessible website has been rendered accessible,

9    and whether corporate policies related to web-based technologies have been changed in a meaningful

10   manner that will cause the website to remain accessible, the website must be reviewed on a periodic

11   basis using both automated accessibility screening tools and end user testing by disabled individuals.

12                                   **THE PARTIES**

13   11. Plaintiff, at all relevant times, is and was a resident of Los Angeles County, California.

14   Plaintiff is a legally blind, visually impaired handicapped person, and member of a protected class of

15   individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing

16   the ADA set forth at 28 CFR §§ 36.101 et seq.

17   12. Defendant is and was at all relevant times a Florida Corporation doing business in

18   California. Defendant's stores are public accommodations within the definition Title III of the ADA,

19   42 U.S.C. §12181(7). Defendant's Website is a service, privilege, or advantage of its services,

20   products and locations.

21                            **JURISDICTION AND VENUE**

22   13. This Court has subject matter jurisdiction over this action as a court of general jurisdiction.

23   This Court has personal jurisdiction over Defendant because it conducts substantial business in the

24   State of California, County of Los Angeles.

25   14. Venue is proper in this Court because Defendant conducts business in this County, with

26   their principal place of business located at 1 East Broward Boulevard, Suite 200, Fort Lauderdale, FL

27   33301, represented by its agent COGENCY GLOBAL INC., located at 115 North Calhoun Street,

28   Tallahassee, FL 32301.

1       15. Limited jurisdiction is proper because Plaintiff seeks a permanent injunction ordering

2 compliance with state and federal accessibility laws pursuant to the Unruh Civil Rights Act.

3 <div align="center">**STANDING**</div>

4       16. Plaintiff PORTIA MASON, is a blind, visually-impaired handicapped person and a

5 member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the

6 regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq.

7       17. Consumers such as the Plaintiff may purchase Defendant's products and access other

8 brand related content and services at www.westmarine.com ("Website"), the Website Defendant

9 owns, operates, and controls.

10       18. In addition to researching and purchasing Defendant's products and services from the

11 comfort and convenience of their homes, consumers may also use Defendant's Website to sign up to

12 receive product updates, discounts, product news, and receive special promotions not available

13 elsewhere.

14       19. Plaintiff was injured when she attempted on February 27, 2025, to access Defendant's

15 Website from her home in an effort to make an online purchase, but encountered barriers that denied

16 her full and equal access to Defendant's online goods, content and services.

17       20. Specifically, the Plaintiff wanted to make an online purchase of a life jacket.

18       21. Plaintiff enjoys fishing and water activities and she wanted to enhance her boating

19 experience for the season, seeking a reliable addition to her gear. She values high-quality and

20 functional equipment that ensures safety without compromising comfort. With this in mind, she

21 explored local online marine retailers, ultimately selecting a life jacket from West Marine, a trusted

22 and versatile choice perfect for complementing her passion for fishing and recreational water

23 activities.

24       22. This website stands out as a premier destination for boating and outdoor enthusiasts,

25 offering a curated selection of high-quality marine gear, apparel, and accessories designed for both

26 safety and performance. With a focus on durability, innovation, and functionality, the brand ensures

27 its products enhance every on-water adventure, catering to those who value reliability, and comfort.

28 Therefore, Plaintiff desired to make an online purchase of a life jacket from the website. Due to

1 | Defendant's failure to build the Website in a manner that is compatible with screen access programs,
2 | Plaintiff was unable to understand and properly interact with the Website, and was thus denied the
3 | benefit of making an online purchase.

4 | 23. The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by
5 | removing these existing access barriers.

6 | 24. Plaintiff has been, and in absence of an injunction will continue to be injured by
7 | Defendant's failure to provide its online content and services in a manner that is compatible with
8 | screen reader technology.

9 | 25. Because of Defendant's denial of full and equal access to and enjoyment of the good,
10 | benefits and services of the Website, Plaintiff has suffered an injury in fact due to her inability to
11 | make an online purchase, which is a concrete and particularized injury, and is a direct result of
12 | Defendant's conduct.

13 | 26. Despite this direct harm and frustration, Plaintiff intends to attempt to access the Website
14 | in the future to purchase products and services the Website offers, and more specifically to make an
15 | online purchase for a life jacket from the website, if remedied.

16 | **NATURE OF ACTION**

17 | 27. The Internet has become a significant source of information, a portal, and a tool for
18 | conducting business, doing everyday activities such as shopping, learning, banking, researching, as
19 | well as many other activities for sighted, blind and visually impaired persons alike.

20 | 28. In today's tech-savvy world, blind and visually impaired people have the ability to access
21 | website using keyboards in conjunction with screen access software that vocalizes the visual
22 | information found on a computer screen or displays the content on a refreshable Braille display. This
23 | technology is known as screen-reading software. Screen-reading software is currently the only
24 | method a blind or visually impaired person may independently access the internet. Unless websites
25 | are designed to be read by screen-reading software, blind and visually impaired persons are unable to
26 | fully access websites, and the information, products, goods and services contained thereon.

27 |
28 |

29. Blind users of Apple macOS operating system-enabled computers and devices have a built-in screen-reading software program available to them. "Voice Over" is one of the most popular screen-reading software programs available for blind computer users.

30. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

31. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making website accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their website are accessible.

32. Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a. A text equivalent for every non-text element is not provided;

b. Title frames with text are not provided for identification and navigation;

c. Equivalent text is not provided when using scripts;

d. Forms with the same information and functionality as for sighted persons are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDFs); and,

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

33. Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changes in a meaningful manner that will cause the Website to remain accessible, the Website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

34. Each of Defendant's violations of the Americans with Disabilities Act is likewise a violation of the Unruh Civil Rights Act. Indeed, the Unruh Civil Rights Act provides that any violation of the ADA constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code, § 51(f).

35. Further, Defendant's actions and inactions denied Plaintiff full and equal access to their accommodations, facilities, and services. A substantial motivating factor for Defendant to deny Plaintiff access was the perception of Plaintiff's disability. Defendant's denial of Plaintiff's accessibility was a substantial motivating factor for Defendant's conduct. Plaintiff was harmed due

- 8 -
COMPLAINT
Exhibit A - Page 19

1   to Defendant's conduct. Defendant's actions and inactions were a substantial factor in causing the

2   lack of access to Plaintiff. Unruh Civil Rights Act. Cal. Civ. Code, § 51.

3                                    **STATEMENT OF FACTS**

4          36. Defendant is a store that offers the website www.westmarine.com to the public. The

5   Website offers features which should allow all consumers to access the goods and services offered in

6   connection with their physical locations. The goods and services offered by West Marine include, but

7   are not limited to, the following: a thoughtfully curated selection of high-quality marine equipment,

8   specializing in boating gear, safety accessories, and essential supplies designed for durability and

9   performance; a diverse range of navigational electronics, including GPS devices, radars, and

10  communication systems to enhance on-water safety and efficiency; exclusive collections of marine

11  apparel and footwear, crafted for comfort and protection in various weather conditions; personalized

12  shopping experiences such as expert guidance, rigging services, and custom boat graphics to meet

13  individual boating needs; and flexible purchasing options, with all products available for order

14  through the online store, in-store pickup, and expedited shipping services.

15         37. It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along

16  with other blind or visually impaired users, access to Defendant's Website, and to therefore

17  specifically deny the goods and services that are offered and integrated with Defendant's stores. Due

18  to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually

19  impaired persons have been and are still being denied equal access to Defendant's stores and the

20  numerous goods, services and benefits offered to the public through its website.

21         38. Plaintiff is a visually-impaired and legally blind person, who cannot use a computer

22  without the assistance of screen-reading software. Plaintiff is, however, a proficient screen-reader

23  user and uses it to access the Internet. Plaintiff has visited the Website on February 27, 2025 using a

24  screen-reader.

25         39. Plaintiff intended to make an online purchase for a life jacket.

26         40. Plaintiff enjoys fishing and water activities and she wanted to enhance her boating

27  experience for the season, seeking a reliable addition to her gear. She values high-quality and

28  functional equipment that ensures safety without compromising comfort. With this in mind, she

1  explored local online marine retailers, ultimately selecting a life jacket from West Marine, a trusted
2  and versatile choice perfect for complementing her passion for fishing and recreational water
3  activities.

4       41. On February 27, 2025, Plaintiff visited Defendant's website, www.westmarine.com, to
5  make an online purchase. Despite her efforts, however, Plaintiff was denied a shopping experience
6  similar to that of a sighted individual due to the website's lack of a variety of features and
7  accommodations, which effectively barred Plaintiff from having an unimpeded shopping experience.

8       42. Additionally, during Plaintiff's visits to the Website, Plaintiff encountered multiple access
9  barriers that denied her full and equal access to the facilities, goods and services offered by Defendant
10  to the public. Plaintiff was thus unable to: learn about stores locations and hours and contact
11  information; make an online purchase, determine prices for and availability of certain products, and
12  related goods and services available both online and in stores.

13       43. Due to Defendant's failure to build its website in a manner that is compatible with screen
14  reader programs, Plaintiff is and was unable to understand, and thus is denied the benefit of, much of
15  the content and services she wishes to access or use. For example:

16       (a) Many interactive elements have a wrong focus order on the page, including the Carousel
17       region from the website that did not comply with necessary accessibility standards. Thus,
18       Plaintiff could not control the navigation through the Carousel section of the website;

19       (b) Many interactive elements on the web page had poor and non-descriptive names, making
20       navigation confusing. The Plaintiff could not determine the purpose of certain buttons or links,
21       hindering her ability to complete the purchase. This lack of clarity disrupted the shopping
22       experience and prevented her from proceeding with the order.

23       44. As a result of visiting Defendant's Website and from investigations performed on her
24  behalf, Plaintiff is aware that the Website includes at least the following additional barriers blocking
25  her full and equal use:

26       a) Different images of the same product had similar descriptive alternative text. Plaintiff could
27       not learn more detailed information about the product and its features;

28

b) Landmark structure was incorrectly defined. Due to repetitive landmark labels, it was difficult for Plaintiff to understand the page section they led to;

c) Interactive elements from the website could not be focused with the Tab key. The website did not provide helpful instructions on how to access the interactive element using arrow keys. Plaintiff did not know about the interactive element from the page;

d) The Navigation menu did not allow the repeated content to be expanded or collapsed, and when the sub-menu was collapsed and it expanded automatically after receiving focus forcing Plaintiff to navigate through all the links the menu contained;

e) The Carousel region from the website did not comply with necessary accessibility standards. Thus, Plaintiff could not control the navigation through the Carousel section of the website;

f) Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links;

g) Interactive elements on the web page had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive element;

h) Interactive elements that behaved as "buttons" were not programmatically written correctly. Instead of using a "role" attribute, they were built by tags such as <span>, <div>, <a>, or others. As a result, the screen reader software read the incorrectly constructed element and Plaintiff was confused, because of receiving ambiguous information about the element in focus;

i) The alert dialog displayed when Plaintiff entered invalid data into the form field was not announced. The user was not informed what field was incorrectly completed;

j) Plaintiff was not aware of the search suggestions after search term was entered into the Search bar. The status update, such as a brief text message about search suggestions, was not provided even though the content of the page was updated and search suggestions were displayed. Without appropriate status message legally blind users do not know that search suggestions appeared on the screen.

45. Due to the inaccessibility of Defendant's Website, blind and visually impaired individuals such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public through its website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from visiting the Website in order to perform functions equal to the sighted.

46. These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's physical locations and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's stores on its website and other important information, preventing Plaintiff from visiting the stores to take advantage of the goods and services that it provides to the public.

47. If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do. In fact, Plaintiff intends to return to the Website when it is equally accessible for visually-impaired consumers in order to complete her intended transaction, as it is more convenient for Plaintiff to access the Website to make a purchase than to travel to a physical location to make the same purchase. However, as long as the Access Barriers continue to exist on the Website, Plaintiff is prevented from making such a purchase.

48. These barriers, and others, deny Plaintiff full and equal access to all of the services the Website offers, and now deter her from attempting to use the Website and/or visit Defendant stores. Still, Plaintiff would like to, and intends to, attempt to access Defendant's Website in the future to research the services the Website offers, or to test the Website for compliance with the ADA.

49. Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff and visually impaired persons have been and are still being denied equal access to Defendant's Website, and the numerous goods and services and benefits offered to the public through its website.

50. Through her attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually impaired people.

51. Though Defendant may have centralized policies regarding the maintenance and operation of its Website, upon and information and belief, Defendant has never had a plan or policy that is

1   reasonably calculated to make its Website fully accessible to, and independently usable by,
2   individuals with vision related disabilities. As a result, the complained of access barriers are
3   permanent in nature and likely to persist.

4       52. The law requires that Defendant reasonably accommodate Plaintiff's disabilities by
5   removing these existing access barriers. Removal of the barriers identified above is readily achievable
6   and may be carried out without much difficulty or expense.

7       53. Plaintiff's above request for injunctive relief is consistent with the work performed by the
8   United States Department of Justice, Department of Transportation, and U.S. Architectural and
9   Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or
10  mandated that the public-facing pages of website complies with an international compliance standard
11  known as Web Content Accessibility Guidelines version 2.2 AA ("WCAG 2.2 AA"), which is
12  published by an independent third party known as the Worldwide Web Consortium ("W3C").

13      54. Plaintiff has been, and in the absence of an injunction will continue to be, injured by
14  Defendant's failure to provide its online content and services in a manner that is compatible with
15  screen reader technology.

16      55. Defendant has long known that screen reader technology is necessary for individuals with
17  visual disabilities to access its online content and services, and that it is legally responsible for
18  providing the same in a manner that is compatible with these auxiliary aids.

19      56. The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In
20  relevant part, the ADA requires:

21      57. In the case of violations of . . . this title, injunctive relief shall include an order to alter
22  facilities to make such facilities readily accessible to and usable by individuals with disabilities . . .
23  Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .
24  42 U.S.C. § 12188(a)(2).

25      58. Plaintiff alleges violations of existing and longstanding statutory and regulatory
26  requirements to provide auxiliary aids or services necessary to ensure effective communication, and
27  courts routinely decide these types of matters.

28

1    59. Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical
2    facts, but rather involves consideration of facts within the conventional competence of the courts, e.g.
3    (a) whether Defendant offers content and services on its Website, and (b) whether Plaintiff can access
4    the content and services.

5    60. Without injunctive relief, Plaintiff and other visually impaired consumers will continue to
6    be unable to independently use the Website, thereby violating their rights.

7    ### FIRST CAUSE OF ACTION

8    **(Violations of the Unruh Civil Rights Act, California Civil Code § 51 et seq.)**

9    **(Alleged by Plaintiff against all Defendants)**

10   61. Plaintiff, on behalf of herself, repeats and realleges every allegation of the preceding
11   paragraphs as if fully set forth herein.

12   62. Defendant stores are "business establishments" within the meaning of the California Civil
13   Code § 51 et seq. Defendant generates millions of dollars in revenue from the sale of its services in
14   California through its store locations and related services and www.westmarine.com is a service
15   provided by Defendant that is inaccessible to customers who are visually-impaired like Plaintiff. This
16   inaccessibility denies visually-impaired customers full and equal access to Defendant's facilities and
17   services that Defendant makes available to the non-disabled public. Defendant is violating the Unruh
18   Civil Rights Act, California Civil Code § 51 et seq., in that Defendant is denying visually impaired
19   customers the services provided by www.westmarine.com. These violations are ongoing.

20   63. Defendant's actions constitute intentional discrimination against Plaintiff on the basis of
21   a disability in violation of the Unruh Civil Rights Act, Cal. Civil Code § 51 et seq. in that: Defendant
22   has constructed a website that is inaccessible to Plaintiff; maintains the website in this inaccessible
23   form; and has failed to take adequate actions to correct these barriers even after being notified of the
24   discrimination that such barriers cause.

25   64. Defendant is also violating the Unruh Civil Rights Act, California Civil Code § 51 in that
26   the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42
27   U.S.C. § 12101 et seq. Section 51(f) of the California Civil Code provides that a violation of the right
28   of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

1    65. The actions of Defendant were and are in violation of the Unruh Civil Rights Act,
2  California Civil Code § 51 et seq., and, therefore, Plaintiff is entitled to injunctive relief remedying
3  the discrimination.

4    66. Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code
5  § 52 for each and every offense.

6    67. Plaintiff is also entitled to reasonable attorneys' fees and costs.

7    68. Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant
8  from violating the Unruh Civil Rights Act, California Civil Code § 51 et seq., and requiring Defendant
9  to take the steps necessary to make www.westmarine.com readily accessible to and usable by
10  visually-impaired individuals.

11                    **SECOND CAUSE OF ACTION**

12    **(Violations of the California Disabled Persons Act California Civil Code § 54.1.)**

13              **(Alleged by Plaintiff against all Defendants)**

14    69. Plaintiff, on behalf of herself, repeats and realleges every allegation of the preceding
15  paragraphs as if fully set forth herein.

16    70. The California Disabled Persons Act ("CDPA") guarantees, inter alia, that persons with
17  disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or
18  services in all business establishments of every kind whatsoever within the jurisdiction of the State
19  of California. Cal. Civ. Code § 54.1.

20    71. The CDPA provides that any violation of the ADA is a violation of the Unruh Act. Cal
21  Civ. Code, § 54.1 (d).

22    72. Defendant's acts and omissions, as herein alleged, have violated the CDPA by, inter alia,
23  denying, aiding, or inciting the denial of, Plaintiff's rights to inaccessibility deny visually-impaired
24  customers full and equal access to Defendant's facilities and services that Defendant makes available
25  to the non-disabled public.

26    73. Because the violation of the ADA resulted in a denial of full and equal access to the
27  Plaintiff, Defendant is also responsible for statutory damages, i.e., a civil penalty. Cal Civ. Code §
28  54.3. Therefore, Plaintiff is entitled to injunctive relief remedying discrimination.

1  74. Plaintiff is also entitled to reasonable attorneys' fees and costs.

2  **THIRD CAUSE OF ACTION**

3  **(Violations of the ADA, 42 U.S.C. § 12181 *et seq.*)**

4  **(Alleged by Plaintiff against all Defendants)**

5  75. Plaintiff, on behalf of herself, repeats and realleges every allegation of the preceding
6  paragraphs as if fully set forth herein.

7  76. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

8  77. No individual shall be discriminated against on the basis of disability in the full and equal
9  enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place
10 of public accommodation by any person who owns, leases (or leases to), or operates a place of public
11 accommodation. 42 U.S.C. § 12182(a).

12 78. Defendant's physical locations is a public accommodation within the definition of Title
13 III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public,
14 and as such, must be equally accessible to all potential consumers.

15 79. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny
16 individuals with disabilities the opportunity to participate in or benefit from the products, services,
17 facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

18 80. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny
19 individuals with disabilities an opportunity to participate in or benefit from the products, facilities,
20 privileges, advantages, or accommodation, which is equal to the opportunities afforded to other
21 individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

22 81. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes,
23 among other things:

24 82. [A] failure to make reasonable modifications in policies, practices, or procedures, when
25 such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or
26 accommodations to individuals with disabilities, unless the entity can demonstrate that making such
27 modifications would fundamentally alter the nature of such goods, services, facilities, privileges,
28 advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no

- 16 -
COMPLAINT
Exhibit A - Page 27

1  individual with a disability is excluded, denied services, segregated or otherwise treated differently
2  than other individuals because of the absence of auxiliary aids and services, unless the entity can
3  demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility,
4  privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C.
5  § 12182(b)(2)(A)(ii)-(iii).

6      83. The acts alleged herein constitute violations of Title III of the ADA, and the regulations
7  promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA,
8  has a physical disability that substantially limits the major life activity of sight within the meaning of
9  42 U.S.C. § 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the
10 Website, has not been provided services that are provided to other patrons who are not disabled, and
11 has not been provided any reasonable accommodation to those services. Defendant has failed to take
12 any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

13     84. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and
14 incorporated therein, Plaintiff, requests relief as set forth below.

15                              **PRAYER FOR RELIEF**

16     WHEREFORE, Plaintiff respectfully requests this Court grant the following relief on behalf
17 of PLAINTIFF:

18     85. A Declaratory Judgment on behalf of Plaintiff that at the commencement of this action
19 WEST MARINE PRODUCTS, INC. was in violation of the specific requirements of Title III of the
20 ADA described above, and the relevant implementing regulations of the Unruh Civil Rights Act,
21 California Disabled Persons Act, and ADA, in that WEST MARINE PRODUCTS, INC. took no
22 action that was reasonably calculated to ensure that its website is fully accessible to, and
23 independently usable by, individuals with visual disabilities;

24     86. A preliminary and permanent injunction pursuant to section 52.1 of the California Civil
25 Code on behalf of Plaintiff enjoining Defendant from violating the Unruh Civil Rights Act and ADA
26 and requiring Defendant to take the steps necessary to make www.westmarine.com readily accessible
27 to and usable by visually-impaired individuals;

28     87. An award of costs and expenses of this action on behalf of Plaintiff;

88. An award of statutory minimum damages of $4,000 per offense per person pursuant to the Unruh Civil Rights Act or California Disabled Persons Act of the California Civil Code on behalf of the Plaintiff.

89. For attorneys' fees and expenses pursuant to California Civil Code §§ 52(a), 52.1(h), California Civil Code §54.1, and 42 U.S.C. § 12205; and

90. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial for all claims so triable.

DATED: March 24, 2025

*Andrew J. Gramajo*

Andrew J. Gramajo, Esq.
**AJG LAW GROUP, PC.**
Attorney for Plaintiff

- 18 -
COMPLAINT